**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

JUAN HOOPER,                       )
                              )
     Plaintiff,               )      **FILED: APRIL 22, 2008**
                              )  No. **08CV2276        TG**
     vs.                    )  **JUDGE MAROVICH**
                              )  **MAGISTRATE JUDGE DENLOW**
SOUTH CHICAGO MOTORS, INC.,   )
                              )
     Defendant**.**           )

**COMPLAINT**
**FACTS COMMON TO ALL COUNTS**

NOW COMES, the Plaintiff, JUAN HOOPER, by and through his attorneys, LARRY P. SMITH & ASSOCIATES, LTD., and in his complaint against SOUTH CHICAGO MOTORS, states as follows:

### I.    Preliminary Statement

1.    This is an action for damages brought by an individual consumer against the Defendant for violations of the Fair Credit Reporting Act (hereafter the "FCRA"), 15 U.S.C. § 1681 *et seq.*, *as amended,* the Equal Credit Opportunity Act, 12 C.F.R. 202, as well as other state and common law causes of action for which the court has jurisdiction

### II.    Jurisdiction and Venue

2.    Jurisdiction of this Court arises under 15 U.S.C. § 1681p, 28 U.S.C. §§ 1331, 1337. Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

### III.    Parties

3.    At all times relevant herein, the Plaintiff, JUAN HOOPER [hereinafter "Plaintiff"], was an individual and a citizen of the Village of South Holland, County of Cook and

State of Illinois.

4.       At all times relevant herein, the Defendant SOUTH CHICAGO MOTORS [hereinafter "Defendant"], was an individual and a citizen of the Village of South Chicago Heights, County of Cook and State of Illinois.  Defendant transacted its business of selling automobiles throughout the County of Cook and State of Illinois.

## IV.    Allegations

### FACTS COMMON TO ALL COUNTS

5.       In June of 2006, Plaintiff sought to transact with Defendant wherein Defendant would locate and obtain for Plaintiff the purchase of a 1997 Buick Park Avenue.

6.       Defendant did locate said vehicle and Plaintiff purchased said vehicle from Defendant for $6,995.00 plus a warranty for $1,475.00 and additional tax and fees bringing the total purchase price to $9,283.21.00.  See Bill of Sale attached hereto as Exhibit "A".

7.       At the time of purchase, Defendant placed on the contract that the Plaintiff made a down payment of $1,300.00 bringing the remaining balance due on the automobile down to $7,983.21.  See Exhibit "A".  Defendant never actually received a down payment from Plaintiff.

8.       Simultaneously, in June of 2006 upon signing the Bill of Sale for the Buick Park Avenue, Plaintiff signed a Vehicle Service Plan valid for twenty-four months or twenty-four thousand miles.  See Vehicle Service Plan attached hereto as Exhibit "B".

9.        On November 13, 2006, resulting from no fault of Plaintiff's, the automobile began to malfunction.  Plaintiff took the vehicle to Steve Peters Chevrolet of Homewood for maintenance as Plaintiff had purchased an extended warranty.

10.      Plaintiff was charged $464.48 for repairing the automobile.

11.      Furthermore, on November 30, 2006, through no fault of his own, Plaintiff's vehicle malfunctioned a second time and Plaintiff returned to Steve Peters Chevrolet of

Homewood for maintenance and was charged an additional $244.98.

12.    Sometime thereafter, Plaintiff was informed that despite his purchase of an extended the warranty, the warranty was never registered by the Defendant resulting in Plaintiff incurring the costs for repairing his automobile out of his own pocket.

13.    At no time did Defendant represent that it would not properly register the automobile and it was the sole responsibility of Defendant to register the automobile.

14.    To date, Defendant has failed to register the warranty Plaintiff purchased with his purchase of the Buick Park Avenue.

15.    Plaintiff has been damaged in that he has been forced to pay out of pocket expenses for repairs to his automobile that would otherwise have been covered under the extended warranty.  Plaintiff also suffers from having a vehicle of substantially less value than a vehicle that is protected by an extended warranty.

## COUNT I

## VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

16.    Plaintiff re-alleges paragraphs 1 through 15 as if fully set forth at length herein.

17.    Defendant's representation that Plaintiff purchased a valid extended warranty good for twenty-four months or twenty-four thousand miles was deceptive and unfair and done solely to extort and obtain financial gain it was not otherwise entitled.

18.    Defendant's representation that it registered the extended warranty purchased by Plaintiff was deceptive and unfair and done solely to extort and obtain financial gain it was not otherwise entitled

19.    Defendant intended Plaintiff to rely on the aforementioned misrepresentations and

3

deceptive acts.

20.     The deception of the Defendant occurred in the course of conduct involving trade or commerce.

21.     Defendant's deception proximately caused Plaintiff's injuries.

WHEREFORE, Plaintiff requests that the Court:

a.     Enter judgment on his behalf against Defendant for all actual, punitive and other damages to which Plaintiff is entitled;

b.     Award attorney's fees, litigation expenses and costs; and

c.     Grant him other relief deemed just and appropriate

## COUNT II
## BREACH OF CONTRACT

22.     Plaintiff re-alleges the foregoing paragraphs as if fully set forth at length herein.

23.     Defendant offered Plaintiff an extended warranty in the amount of $1,475.00 good for twenty-four months or twenty-four thousand miles.

24.     Plaintiff accepted Defendant's offer of an extended warranty in the amount of $1,475.00 good for twenty-four months or twenty-four thousand miles when he signed a contract and made the required down payment on June 10, 2006.

25.     Defendant breached his duty pursuant to the contract when it failed to properly register the extended warranty.

26.     As a result of Defendant's breach, Plaintiff was forced to pay out of pocket for repairs and maintenance on his vehicle which would have otherwise been covered under the warranty.

WHEREFORE, Plaintiff requests that the Court:

a.      Enter judgment on his behalf against Defendant for all actual,

punitive and other damages to which Plaintiff is entitled;

b.      Award attorney's fees, litigation expenses and costs; and

c.      Grant him other relief deemed just and appropriate

## COUNT III
## VIOLATION OF THE EQUAL CREDIT OPPORTUNITY ACT

27.    Plaintiff re-alleges the foregoing paragraphs as if fully set forth at length herein.

28.    In June of 2006, when Plaintiff purchased a used vehicle from Defendant, Defendant sought to assist Plaintiff in obtaining financing for the transaction by obtaining Plaintiff's credit application and disseminating it among various potential credit grantors, including Defendant.

29.    Upon receipt of the credit application, Defendant gained access to Plaintiff's credit report through one or more of the major credit reporting bureaus.

30.    Defendant rejected Plaintiff's credit application and refused to finance the transaction.

31.    The ECOA regulation, 12 C.F.R. 202.12 provides:

(b) Preservation of records -- (1) Applications. For 25 months (12 months for business credit, except as provided in paragraph (b)(5) of this section) after the date that a creditor notifies an applicant of action taken on an application or of incompleteness, the creditor shall retain in original form or a copy thereof:

(i) Any application that it receives, any information required to be obtained concerning characteristics of the applicant to monitor compliance with the Act and this regulation or other similar law, and any other written or recorded information used in evaluating the application and not returned to the applicant at the applicant's request;

(ii) A copy of the following documents if furnished to the applicant in written form (or, if furnished orally, any notation or memorandum made by the creditor):

5

(A) The notification of action taken; and

(B) The statement of specific reasons for adverse action; and

32.     Defendant failed to comply with the above provision in that in numerous instances of the receipt of a credit application, Defendant accessed the credit report of the potential customer but retained no records whatsoever of information pertaining to the above cited statute.

33.     Plaintiff suffered damages as a result of this failure in that the consumer is deprived of the ability and opportunity to determine the reasons for the denial of credit, to see what information was viewed by the potential creditor to determine its accuracy, and to assure himself that there have been no improper civil rights violations by Defendant.

34.     Plaintiff is entitled to damages including a punitive damage to be levied upon this Defendant.

35.     On information and belief, Defendant knew or should have known that it was violating the ECOA.

36.     Unless enjoined from further doing so, Defendant is likely to commit similar violations in the future.

## COUNT IV
## VIOLATION OF THE FAIR CREDIT REPORTING ACT

37.     Plaintiff re-alleges the foregoing paragraphs as if fully set forth at length herein.

38.     In June of 2006, when Plaintiff purchased a used vehicle from Defendant, Defendant sought to assist Plaintiff in obtaining financing for the transaction by obtaining Plaintiff's credit application and disseminating it among various potential credit grantors, including Defendant.

39.     Upon receipt of the credit application, Defendant gained access to Plaintiff's

6

credit report through one or more of the major credit reporting bureaus.

40.    Defendant rejected Plaintiff's credit application and refused to finance the transaction.

41.    The Fair Credit Reporting Act provides:

"[I]f any person takes any adverse action with respect to any consumer that is based in whole or in part on any information contained in a consumer report, the person shall provide oral, written, or electronic notice of the adverse action to the consumer…to include (i) the name, address and telephone number of the relevant consumer reporting agency that furnished a report in connection with the adverse action, (ii) a statement that the agency did not make the decision to take the adverse action and is unable to provide the consumer the specific reasons why the adverse action was taken, and (iii) information regarding the consumer's right to obtain a free copy of a consumer's report from the agency and to dispute the accuracy or completeness of any information in the consumer report. 15 U.S.C. § 1681m(a)(2)-(3).

42.    Defendant failed to provide Plainitff any notice either oral, written or electronic regarding the consumer reporting agency that furnished a report or the information regarding Plaintiff's right to obtain a free copy of his report or any of the information required by the FCRA.

43.    Plaintiff is entitled to damages including a punitive damage to be levied upon this Defendant.

44.    On information and belief, Defendant knew or should have known that it was violating the ECOA.

45.    Unless enjoined from further doing so, Defendant is likely to commit similar violations in the future

***PLAINTIFF FURTHER DEMANDS A TRIAL BY JURY***

WHERFORE, Plaintiff, JUAN HOOPER, requests that the Court enter judgment in favor of Plaintiff and against Defendant for:

    a.       Actual damages;

    b.       Statutory damages;

    c.       Attorneys' fees, litigation expenses and costs of suit;

    d.       Such other or further relief as the Court deems just and proper.

Respectfully Submitted,
**JUAN HOOPER**


By:    s/Larry P. Smith         
          Attorney for Plaintiff

LARRY P. SMITH & ASSOCIATES, LTD.
Attorneys for Plaintiff
205 N. Michigan Ave., Suite 4000
Chicago, IL 60601
Phone: (312) 222-9028